Bergan, J. (dissenting).
Since the jury after 10 days of trial, in which the purported malpractice and negligence of the pediatrician Dr. Hellmann was exhaustively treated, found a verdict for the physician which has been affirmed at the Appellate Division, reversal in this court may rest only on an error of law.
The majority opinion finds as the sole ground for reversal error in a failure to submit to the jury a “ second theory ”, whether this defendant could be found guilty of malpractice ‘ ‘ for not noticing that his orders were not being followed by the hospital nursing staff ”.
There was no such “ second theory ” of liability in the sense it could be deemed a separable entity apart from the general charge of negligence and malpractice against Dr. Hellmann under the pleadings, the bill of particulars or the argument of the plaintiffs’ counsel to the jury. There was proof that the nurses’ notes may have shown departure from his orders as to the quantity of oxygen administered. Under some circumstances this might become a basis of liability but for reasons to be stated those circumstances do not exist here.
But assuming the jury could have found that Dr. Hellmann had not noticed that “ his orders were not being followed ” by the nurses and that this could become part of the basis of liability for negligence or malpractice, this was not tendered as a separate issue or “ theory ” by the plaintiffs.
*267 The complaint charged negligence against the physician in the broadest possible terms of malpractice. It said not a word about failing to check to see that Dr. Hellmann’s orders were followed.
The two bills of particulars, amplifying the charges of negligence and malpractice, gave no hint of any such theory. And the long summation to the jury by counsel for plaintiffs made no mention whatever either of this failure to follow up orders, or this as a separable “ theory of liability ”.
Therefore, the effect of checking the nurses’ notes was one of many details of treatment which had occupied the jury for a period of 10 days in this trial to determine whether there had been negligence or malpractice. The record cannot be read to show it as a separate “ theory ”. It was left by the plaintiffs undifferentiated from a" mass of other material in the record in support of their single cause of action against Dr. Hellmann.
The plaintiffs’ brief in this court states that “ The jury could have found * * * that Dr. Hellmann, by reason of negligence, failed to discover or note the failure to follow his orders But plaintiffs did not argue this before the jury; and in the light of an entirely adequate charge on negligence and malpractice by the Judge, there was no need for the Judge, in response to a request, to be more minute in subdividing negligence and malpractice for the jury than the plaintiffs had been in their argument to the jury.
The Judge’s charge followed the classic form for malpractice and medical negligence. It was unexceptionable and, in fact, no exception was taken to it. Counsel, responding to the Judge’s question, said: “ No, I have no exception to the charge. ” •
It is important, then, to see exactly what the Judge said in this legally correct charge:
“It is claimed here that the defendant, Dr. Hellmann, by his carelessness in departing from the approved medical practice of pediatrics in the area where he practiced, caused injuries to the plaintiffs. The fact that the oxygen caused the injury, which is readily conceded, does not make Dr. Hellmann liable. Before you can hold Dr. Hellmann liable for these injuries, you would first have to decide whether Dr. Hellmann, as a specialist in the field of pediatrics, considering all of the circumstances of the premature birth and their health at the time *268 of the delivery, did what a physician practicing his specialty in June of 1953, possessed of the skill and knowledge of other pediatricians in the area, other men practicing that specialty in this area at that time, whether he did what they would have done under like circumstances.
“ You may take into consideration whether or not such a physician, having the knowledge of men practicing the specialty in the area and following accepted medical procedures would have foreseen the probability of injury as a result of the use of oxygen. You would also consider whether or not such a physician would have taken into account the possibility fatality, the possible death of the infants, or other injury, if he had not followed the procedure. And if he were confronted with the choice of more than one procedure, whether a pediatrician, possessing the average skills of accepted medical practice in the area, would have done what Dr. Hellmann did in order to sustain the life of the children. ”
Since the jury was not being asked for a special verdict but was to return a general verdict on malpractice and negligence, no breakdown in details of the purported negligence was required from the Judge under the pleadings, the proof or the argument of counsel.
A Judge does not commit legal error because he declines to include detail in his instruction to the jury or to give emphasis to an argument of one side by stressing points which a party himself neglects to argue to the jury.
This is request No. 4: “ If you find that Dr. Hellmann directed that after the first 12 hours the dosage of oxygen should be reduced from six litres to four litres, and if you find that the nurses’ notes in the hospital charts disclosed that such orders were not being followed, and that the doctor failed to observe such nurses’ notes over a period of approximately thirty days and to learn that his orders were not being followed, you may find such failure on his part to observe said nurses’ notes and to learn that his orders were not being followed constituted negligence on his part and the failure to exercise the diligence required of him under the circumstances, and if you further find that the doctor’s failure to observe that his orders were not being carried out caused or contributed to cause the development of RLF in the plaintiffs, or its development in a more *269 severe form than would otherwise have developed, you may find a verdict against the doctor for such results of his negligence. ”
This is No. 5: “ If you find that Dr. Hellmann believed that the continuous administration of oxygen to the babies at the rate of six litres per minute after the first 12 hours would be harmful to them, and that the dosage should be reduced to four litres per minute after the first 12 hours, and you find that the dosage was continued after the first 12 hours at six litres per minute instead of being reduced, and you further find that the doctor failed to ascertain that six litres were being administered after the first 12 hours for approximately 30 days, then under the circumstances disclosed by the evidence in this case you may find such failure by him to ascertain that fact to be not in accord with the accepted standards of care and diligence required of physicians, and if such failure on his part contributed to cause or to aggravate the injuries of either or both of the plaintiffs you should return a verdict against the doctor. ”
The denial to charge in the form of these requests was not unequivocal. The refusal was “ except as already charged ”.
Each of these requests, it will be noted, involves the acceptance of complex and complicated combinations of circumstances, and deductions from combinations of circumstances, which no court should be asked to throw together to fill in gaps in the argument which counsel had not himself made to the jury.
There were 17 requests to charge made by plaintiffs. Presumably they were in writing and, since the summations and the charge were made on the same day, were in existence when counsel for plaintiffs made his summation.
If this kind of strategy succeeds, counsel could stand before a jury with detailed and argumentative requests in his pocket, omit to mention the subject to the jury, and then seek a charge on the subject overlaid with judicial emphasis which would fill in the vacant interstices in his presentation. The Judge had no such duty in this case and it is not reversible error for him to refuse to follow this strategem.
The plaintiffs ’ brief in this court states:
‘ ‘ The court had stated earlier during argument * * * ‘we must assume that he [Dr. Hellmann] examined what the nurses were doing and that he was satisfied that they were carrying *270 out his orders ’. His refusal of plaintiffs’ Bequests numbers 4 and 5 was consistent with this unwarranted assumption that Dr. Helhnann just could not be negligent, and it effectively eliminated from consideration by the jury the very heart of the plaintiffs’ claims against Dr. Hellmann. ”
The inference seems suggested that somehow the jury was told by the court that this was the court’s assumption. But this statement was not in the presence of the jury, and, as it has been noted, there was no exception to the entirely proper general charge. No good ground exists in this record for reversal because of the limited refusal to charge in the form requested.
Nor could liability in any event have been predicated under this record on a failure of the physician to observe the nurses’ notes on the quantity of oxygen given, and this would throw light on why plaintiffs did not plead or particularize this before the trial or argue it before the jury at the trial.
There was no proof that the variable quantities of oxygen actually administered to the infant plaintiffs as shown by the nurses’ notes (a flow of 6 liters or of 4 liters) would have made any difference in the contracting of the disease.
Plaintiffs’ experts, Dr. Kaessler and Dr. Josephson, testified it was contrary to customary practice to give any supplementary oxygen to the children regardless of quantity, and Dr. Silver-man, defendants’ witness, testified that the administration of oxygen for any prolonged period, whether 6 liters or 4, could produce BLF.
There is, thus, proof in the record that the administration of oxygen could cause the disease, but no proof that in the critical period of the first 10 days after birth any different consequence resulted from a quantity of 4 or 6 liters. Therefore, the nurses’ notes on these two quantities could not become a basis of liability on this record.
For similar reasons the complaint against the defendant hospital was properly dismissed by the Trial Judge. There is, as the hospital argues here, ‘ ‘ no evidence that the administration of 6 liters of oxygen at the times set down in the nurses’ notes caused the disease ”.
The hospital’s procedures, as well as those of the physicians, followed accepted standards of medical care in June and July of 1953. The proof was that the administration of supplementary *271 oxygen was followed in many of the leading hospitals at that time.
That later scientific discovery showed some other procedure should have been followed ought not to bring home a retroactive liability either to physician or hospital. The prime purpose of the procedure was to save the lives of the children; that later knowledge showed the serious side effects might have been avoided ought not spell out a liability under this record.
The order should be affirmed.
Judges Burke, Breitel and Jasen concur with Judge Keating ; Judge Behgan dissents and votes to affirm as to all defendants in a separate opinion in which Chief Judge Fuld and Judge Scileppi concur.
Order modified by reversing and granting a new trial, with costs to abide the event as to defendants Community Hospital and Hellmann, and, as so modified, affirmed, without costs.